# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Double-wide trailer with blue roof, SUBJECT PREMISES, GPS 36.78018, -108.63465, Shiprock, New Mexico 87420 | ) ) ) ) |

Case No.  24-MR-2107

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Attachment A

located in the _____ District of   New Mexico   , there is now concealed *(identify the person or describe the property to be seized)*:

Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951 | Obstruction of Interstate Commerce by Robbery |

The application is based on these facts:
See attached affidavit, incorporated herein for reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lorraine Hardy, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically Sworn and Electronically Signed   *(specify reliable electronic means)*.

Date: 11/15/2024

*Judge's signature*

City and state:   Farmington, NM          B. Paul Briones, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:** Double-wide trailer with blue roof, SUBJECT PREMISES, GPS 36.78018, -108.63465, Shiprock, New Mexico 87420 | Case No. __24-MR-2107__ |

**AFFIDAVIT**

I, Lorraine Hardy, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I currently serve as an FBI Special Agent assigned to the FBI, Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes that occur in Indian Country to include homicide, aggravated assault, child sexual assault, kidnapping, rape, and child exploitation offenses. I have been employed with the FBI for approximately five years. I have received on-the-job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience includes processing crime scenes, conducting surveillance, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, examining cellular telephones, managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting and reviewing evidence, and analyzing public records.

2. The information set forth in this affidavit has been derived from an investigation conducted by the Farmington Resident Agency of the FBI, Navajo Nation Department of Criminal Investigation (NNDCI), and the Navajo Nation Police Department

1

(NPD). During my investigation, I have developed information I believe to be reliable from the following sources:

    a.    Information provided by the FBI, NNDCI, NPD, and other law enforcement officials;

    b.    Information provided by witnesses; and

    c.    Records from the FBI National Crime Information Center (NCIC), Navajo Tribal Courts, and New Mexico Courts.

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause for the requested warrant.

4. Based on the facts set forth in this affidavit, there is probable cause that a violation of 18 U.S.C. § 1951, Obstruction of Interstate Commerce by Robbery, was committed by Ryan Yazzie (YAZZIE), year of birth 1997. There is also probable cause to believe evidence of this crime will be found at the SUBJECT PREMISES.

## PROBABLE CAUSE

5. On or about October 31, 2024, at approximately 4:33 p.m., the Farmington Resident Agency of the FBI was notified by Navajo Nation Department of Criminal Investigations (NNDCI) that the 7 to 11 Gas Station in Shiprock, New Mexico was robbed. An unidentified male knocked down a female cashier (JANE DOE), year of birth 1970, grabbed the cash register drawer and fled on foot. Navajo Police Department (NPD) officers later that day detained two other possible suspects hereinafter referred to as A.E., year of birth 1992, and J.W., year of birth 1985. NPD advised A.E. and J.W. were under

2

the influence of an unknown substance and were transported to Kayenta Correctional Facility in Arizona. JANE DOE was taken to Northern Navajo Medical Center for treatment.

6. It was learned from an NPD police report (02-24-019142) that officers were dispatched to the 7 to 11 Gas Station at approximately 6:30 a.m. for a robbery. On arrival NPD officers went to the front door of the Gas Station, which was locked. 7 to 11 Store Manager (E.R.), year of birth 1962, opened the front door. E.R. told officers she saw a male (UNSUB 1), wearing a grey hooded sweater, shove JANE DOE, grab the cash register drawer, and take off out the front doors. E.R. stated earlier that morning at approximately 5:32 a.m., she observed a grey SUV pull up from the laundromat next door and reverse into a parking spot. Two males exited the SUV wearing masks and came into the store.[1] E.R. told them they could not wear masks in the store. E.R. recognized UNSUB 1 who went into the restroom, the other male (UNSUB 2) wandered around the store, and then they both left. E.R. identified UNSUB 1 as the male who robbed the store later in the morning.

7. NPD officers observed the 7 to 11 Gas Station store security footage and saw JANE DOE being shoved to the floor by UNSUB 1. On another store security video officers observed UNSUB 1 run behind the store headed north after robbing the store. He was wearing a grey hoodie, black pants, and black and white Converse shoes. After viewing the footage and exiting the store, NPD officers were unable to locate UNSUB 1.

---

[1] The "store" is mentioned throughout and is referenced as the 7 to 11 Gas Station store in Shiprock, New Mexico.

3

8.      JANE DOE was interviewed by law enforcement the following day at NNDCI office in Shiprock. JANE DOE started her shift at the 7 to 11 Gas Station the day prior at 4:00 a.m. JANE DOE and E.R. were the only two working. At approximately 5:30 a.m. two males entered the store with face masks on and JANE DOE heard E.R. tell them no masks allowed in the store. One male was wearing a black jacket and had a clown mask under his arm. Law enforcement later identified him as UNSUB 2. The other male was wearing a grey hooded sweatshirt and an orange towel or shirt over his face. Law enforcement later identified him as UNSUB 1. UNSUB 1 went into the restroom and UNSUB 2 walked around the store and then left. UNSUB 1 came out of the restroom without the orange face covering and stood near the popcorn machine. UNSUB 1 kept looking behind the counter and then left the store.

9.      At approximately 6:25 a.m. JANE DOE saw UNSUB 1 walk back into the store. JANE DOE did not see UNSUB 2. UNSUB 1 made himself a fountain drink and then walked over the counter near the register and asked for a straw. JANE DOE told him she would give him one when he paid for his drink. UNSUB 1 hung out near the front counter near the area to get behind the counter. JANE DOE was suspicious he may attempt to steal cigarettes, so she kept an eye on him. JANE DOE was helping a customer and as soon as the register drawer came open, UNSUB 1 moved behind the counter and grabbed the cash tray. JANE DOE also grabbed the cash tray to attempt to keep UNSUB 1 from taking it. UNSUB 1 pushed JANE DOE down, and she hit her head. JANE DOE yelled for E.R., and UNSUB 1 ran out the front door with the cash tray.

10.     JANE DOE later felt pain in her head, so she went to Northern Navajo Medical Center (NNMC) for treatment. JANE DOE suffered from left wrist and left elbow

4

pain as well as a bump on her head. JANE DOE stated she was really scared during and after the incident. JANE DOE was afraid UNSUB 1 might come back and hurt her.

11. I interviewed E.R. and learned that the occupants of the grey SUV have been coming to the 7 to 11 Gas Station for the last week, stealing food items, and then fleeing. E.R. described the grey SUV as being an older model with a big round crack on the passenger side windshield. I observed the 7 to 11 Gas Station security footage of the grey SUV backed into a parking spot.

12. E.R. detailed the event of the robbery as described above to NPD officers. E.R. also stated a female with a tattoo on her face who E.R. had previously seen get into the grey SUV came into the store to get gas around the same time UNSUB 1 robbed the store. Law enforcement later identified the female as A.E. E.R. saw A.E. on the surveillance footage parked at the gas pumps to get gas. E.R. observed A.E. get out of the passenger side of the SUV and come inside the store to pay for her gas. A.E. was standing behind UNSUB 1 when he robbed the store. After the UNSUB 1 left, A.E. ran outside and jumped back into the grey SUV and took off towards Farmington. E.R. did not see who the driver of the grey SUV was.

13. E.R. stated UNSUB 1 was in his early 30s, tall, wearing a grey sweatshirt and black pants as well as a white scarf or shirt over his face. UNSUB 2 had on a clown mask with orange hair. E.R. provided law enforcement a photo of the stolen cash register tray. E.R. had previously taken the photo of the cash register tray for the purpose of training new employees.



14.     The following day J.W. was interviewed by law enforcement at Kayenta Correctional Facility in Arizona. J.W. stated he was cruising around with his friend A.E. and another friend, Ryan Yazzie (YAZZIE), year of birth 1997, who J.W. had just met a month or two ago. (UNSUB 1 and UNSUB 2 will hereafter be referred to as YAZZIE and J.W.) J.W. stated neither he nor A.E. had any part in the robbery and did not want anything to do with it. J.W. stated the grey SUV they were cruising around in belonged to A.E.

15.     J.W. stated he parked at the laundromat next to the 7 to 11 Gas Station. J.W. could not remember what time it was but it was dark outside. YAZZIE kept talking about getting some money. J.W. told YAZZIE he was on his own and did not want YAZZIE in his vehicle. J.W. believed J.W. was concerned YAZZIE was going to rob the gas station and get J.W. in trouble. YAZZIE got out of the grey SUV and went into the 7 to 11 Gas Station. J.W. and A.E. sat in the grey SUV and watched because they knew YAZZIE was going to do something. YAZZIE was in the gas station for a while before J.W. saw YAZZIE running out of the store holding his hands up to this chest. YAZZIE ran behind the store, and J.W. did not know where he went.

6

16.     J.W. saw YAZZIE approximately two hours after he robbed the gas station at another friend's house (the SUBJECT PREMISES) in Hogback,[2] New Mexico. J.W. stated the SUBJECT PREMISES was near Laphahie Food Stand in Hogback. J.W. showed law enforcement the location of the SUBJECT PREMISES on Google maps (GPS 36.78018, -108.63465). J.W. stated YAZZIE used to live at the Nizhoni Park in Shiprock but was now staying at the SUBJECT PREMISES.

17.     While at the SUBJECT PREMISES, YAZZIE pulled a wad of cash out of his pocket and started laying it down on the table counting it. J.W. saw the cash and YAZZIE acted excited about it. J.W. got into an argument with YAZZIE for possibly getting him into trouble. J.W. believed the grey SUV was seen during the robbery and police would think it was J.W. who robbed the store.

18.     J.W. also stated he and YAZZIE had gone into the gas station earlier that same day to get drinks. J.W. believed YAZZIE had cash, but when J.W. realized YAZZIE did not have any money they left. J.W. recalled wearing face masks into the store but the lady in the store said they had to take them off. J.W. got the face mask from a friend for his son to use for Halloween.

19.     The following day A.E. was interviewed by law enforcement at Kayenta Correctional Facility in Arizona. A.E., her daughter, and her friend, J.W., was cruising around in A.E.'s grey SUV. A.E. needed gas, so she went into the 7 to 11 gas station and stood in line. A.E. was swiping her card to pay for fuel when she saw YAZZIE standing

---

[2] Hogback is used in reference to a small community located on the east side of Shiprock, New Mexico.

behind her. A moment later, YAZZIE went around the counter, and A.E. saw the cashier lady fall to the ground. YAZZIE grabbed the whole cash register and ran out the front door headed east. The cashier who had been helping A.E. got on the phone, so A.E. just left. A.E. was uncertain what time of day it was but stated it was dark outside.

20. A.E. later admitted to knowing who YAZZIE was because he was J.W.'s friend. A.E. knew YAZZIE as "Cowboy" and had met him prior to the robbery outside of J.W.'s friend's house in Hogback, New Mexico. A.E. showed law enforcement the location of the friend's house on Google maps. The location identified by A.E. was in the same area as the SUBJECT PREMISES identified earlier by J.W.

21. A.E. stated that while at the SUBJECT PREMISES in Hogback YAZZIE asked A.E. and J.W. for a ride to the store. A.E. believed YAZZIE was hyped up and energetic to do "something," but A.E. did not know what. A.E. did not speak to YAZZIE, but believed YAZZIE may have been high on methamphetamine due to his behavior. A.E. did not see YAZZIE use methamphetamine.

22. A.E. was later shown a photo to see if the man in the photo was J.W.'s friend. A.E. stated she was 100% certain the man in the photo was J.W.'s friend, the man she and J.W. gave a ride, and the man she saw rob the store.



Photo of YAZZIE

23. After speaking with E.R. it was learned she had to close the store for approximately an hour for the safety of her employees and to allow law enforcement to process the crime scene. The store lost revenue due to not having any paying customers during that time. Most of the merchandise sold in the store is manufactured and shipped from locations outside the State of New Mexico. The total amount of cash stolen from the register totaled 276.00 dollars and a roll of postage stamps.

24. The SUBJECT PREMISES is located at GPS 36.78018, -108.63465 in Shiprock, New Mexico.

25. The SUBJECT PREMISES was identified by J.W. as both the place where YAZZIE was staying on or about October 31, 2024, and as the location where J.W. saw YAZZIE pull out a wad of cash approximately two hours after the robbery.

26. When identifying the SUBJECT PREMISES, J.W. pointed to the double-wide trailer with the blue roof when presented with a Google map.

27. The general area of the SUBJECT PREMISES was independently identified by A.E. as where she had met YAZZIE before the robbery.

28. Based on my training, experience, and participation in this and similar investigations, I know that individuals involved in robberies often conceal evidence of a crime, such as items stolen during a robbery, in their residences and businesses, the residences of friends or relatives, or in surrounding areas that they have ready access such as garages, carports, and outbuildings. I also know that individuals involved in robberies often conceal evidence of their crimes in vehicles, including vehicles outside of their residences and businesses, to hide it from law enforcement and so that they have ready access to it.

**CONCLUSION**

29.     Based on the facts set forth in this affidavit, there is probable cause to believe a violation of 18 U.S.C. § 1951, Obstruction of Interstate Commerce by Robbery, by YAZZIE occurred and that evidence of this crime may be found at the SUBJECT PREMISES. Therefore, I am seeking authorization under Rule 41 of the Federal Rules of Criminal Procedure to search the SUBJECT PREMISES described in Attachment A and seize the evidence described in Attachment B.

30.     This affidavit has been reviewed and approved by Assistant United States Attorney Jena Ritchey.

Respectfully submitted,

_____<br>
Lorraine Hardy, Special Agent<br>
Federal Bureau of Investigation

Electronically SUBSCRIBED and telephonically SWORN to me this 15th day of November 2024.

_____
HONORABLE B. PAUL BRIONES
United States Magistrate Judge

# ATTACHMENT A
## PLACE TO BE SEARCHED

The SUBJECT PREMISES, which is a double-wide trailer with a blue roof located at GPS 36.78018, -108.63465, in Shiprock, New Mexico 87420. The search of the SUBJECT PREMISES shall include the entire trailer and all trash receptacles, inoperable vehicles, and detached structures located nearby SUBJECT PREMISES.





## ATTACHMENT B

### PROPERTY TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, namely a violation of 18 U.S.C. § 1951, Obstruction of Interstate Commerce by Robbery:

1. Black cash register tray;
2. Grey hooded sweatshirt;
3. Black and white Converse shoes;
4. Cash;
5. Postage stamps.